May it please the Court, my name is George Haridis, appearing on behalf of Petitioner Taranjeet Singh Neela. This is another streamlined case where the Board of Immigration Appeals affirmed the finding of the Immigration Judge's decision denying asylum and withholding of removal. Therefore, the Immigration Judge's decision is the final agency determination in this case, which we review for substantial evidence. The threshold, and indeed the only issue in this case, is credibility. To support an adverse credibility finding, the I.J. must base her decision on specific and cogent reasons, not on mere speculation, conjecture, or unfounded assumptions. In the present case, it seems that we only have one inconsistency, which the Immigration Judge admits on page 49 of the administrative record is not essential to his detainments and where he was detained during his first and second arrests. Petitioner testified that he was arrested on two occasions and that he was beaten approximately around 50 times during his first arrest, although he does not say how many times he was beaten on his second arrest. However, we do know that on each occasion he was detained about six months. Based on these factors, the I.J. appropriately stated that any discrepancy regarding how he was beaten or where he was detained was not essential to his case, considering the fact that he had been beaten so many times and had been detained for such a long period that it is understandable that he would have been confused momentarily about the specifics of these two arrests and that he would not have been able to provide his testimony on cross regarding these issues. Is it your biggest problem that, in fact, the I.J. also made observations about demeanor and that the I.J. was there, observed your client, and your client appeared to be reading or reciting a part of a prepared statement, and whenever he got off of that statement, he became very nervous and how does a panel sitting here today second guess the observations of an I.J. and those circumstances? Yes, Your Honor. Well, I believe the I.J.'s findings on those points is unfounded because if you look to her allegation that his testimony appears to be a recitation, a memorized recitation of facts, we consider the fact that his declaration is five pages long and a single space, which is, in my experience, quite lengthy for an asylum application declaration. And therefore, I would be troubled if he didn't recite something that came from that considering the fact that he did essentially write it, it was transcribed for him, so it would be natural that he would say a few phrases that would come directly out of it, which he only cites, I believe, two or three instances where that happened. As far as her allegation of his being evasive, she says in her decision that he pretty much testified consistently and held together a story for the most part, but that it fell apart at the end. Well, it fell apart in the end to the extent that at his last hearing, I believe, in my submission of examining the court, the transcript, that she was exclusively asking him questions. And at that point, he became agitated and may have then that would probably be the basis for her allegation that he was evasive based on what I would even call badgering of the petitioner in that sense. And so we have what the IJ says is consistent testimony in that he held together his testimony both on direct and cross, but that he became agitated and evasive, although she doesn't say what parts of his testimony she considered to be agitated or evasive, but we assume that it's his last hearing when she was asking him all those questions. Other than that, the only other issues raised by the immigration judge are identity and his documentation. I submit his identity is not in question in this case. He submitted two affidavits from people in the United States who attested to his identity. He has submitted a driver's license with his photo ID, which the IJ only questioned because it was issued, I believe, three days the release of his second arrest. But petitioner explained that he applied for the driver's license and that it was just simply issued while he was still in jail. He had applied for it, I believe, two years prior. And considering the fact that the immigration judge does not hold herself out to be an expert in the way driver's licenses are issued, and in fact, I believe she says that she's not really sure how that matter is conducted in India, I don't see how she can base an adverse credibility finding on his testimony regarding how he obtained his driver's license. And the two affidavits she did not accept as far as the two individuals who attest to his identity that are residents of the United States of America, she did not give the petitioner an So in that sense, their affidavits should at least be considered until such time as he can prove that it is proven that they are available. The IJ also questioned the fact that the petitioner did not submit corroboration of his testimony regarding the medical treatment he received. He testified that he tried to obtain that information, but that the doctor would not give him such corroboration. And based on that fact, the IJ still did not conclude that his explanation was reasonable and to find that such corroboration was unavailable. Based on the circumstances, I believe because the petitioner testified credibly, the corroboration is not required in this case where it is unavailable and it is well established that refugees have a difficult time obtaining any corroboration of their documents. And yet in this case, the petitioner submitted much documentation and yet testified that he was not able to obtain medical corroboration, even though he would have done so if he could. Before I defer to the response counsel. The broad statement with regard to refugees having difficulty obtaining documentation is true in general, but in the context of somebody who had been in the United States for at least a couple of years before the immigration hearing and which progressed sometimes at a leisurely pace, although this isn't as slow as some others, and dealing with a country such as India, which is not foreclosed or walled off from the United States, is it really so much the case that someone who is claiming asylum here is still physically unable to find some kind of documentation from his home country that at least establishes who he is? Well, yes, Your Honor. He did submit his driver's license and he did submit other affidavits attesting to his identity. He has also testified that his brothers are no longer in India and that apparently only his father is able to obtain documentation for him. And being that his father is an elderly man, I think the petitioner should be commended in this case for submitting as much documentation as he could, as he did. And before I defer to the response counsel, I just want to go over the fact that petitioner has testified credibly and established persecution based on imputed political opinion, based on the allegations forwarded by the Indian police alleging that he was involved with Milton's activity. Both he and his family were involved with the Milton activity. The immigration judge found that his entire testimony was not plausible based on, I guess you refer to the background documentation. However, I think in the context, if we examine the record, it's entirely plausible that the Indian police would have been interested in the petitioner and his family. And I will defer now to the response counsel and follow up on that point, and rebuttal. Thank you. All right. Thank you. Good morning. May it please the Court. My name is Debbie Messier, and I represent the Attorney General. This is an asylum case in which the immigration judge denied relief on the basis of the implausibility of the stated claim and an adverse credibility determination. Contrary to opposing counsel's suggestion, the only issue is not adverse credibility, but also the overall implausibility of the claim. Since the petitioner's testimony in the record supports the immigration judge's denial of relief and does not compel a contrary result, we ask the Court to affirm the final order of removal and deny the petition for review. In this case, petitioner claims that he suffered past persecution and a well-founded fear of future persecution on account of his Sikh religion and imputed political opinion because he says the who were at the time agitating for a separate Sikh state. First, I want to address the plausibility issue in this case. Petitioner, by his own admission, is completely apolitical. He said repeatedly during his testimony that he had nothing to do whatsoever with the militants or Sikh terrorists operating in the Punjab at the time. He submitted a 1998 Indian driver's license to prove his identity. The picture on the driver's license shows a clean-shaven man not wearing a turban. He clearly was not an observant Sikh when he was in India. His testimony that the police mistakenly thought he was associated with terrorists because they allegedly came to his family's mill and obtained a copy of the supplies from his brother over a period of years and because a bomb went off at his family's mill and then a month later a bomb killed the Punjabi minister, B. Nath Singh, frankly defies logic. It defies logic that the police would think that the plaintiff and his family who had suffered a bombing at their mill had themselves bombed, had bombed their own plant and then been engaged in a separate bombing a month later. Why does all of that defy logic if it's fairly well accepted that in fact this individual's brother was indeed involved with the terrorists? Your Honor, it's not accepted. The immigration judge made an adverse credibility determination in this case. He's testified that the terrorists came to his brother's mill over a period of years. He's not testified, however, interestingly, that the police were ever interested in his brother until their own family's plant was bombed. And that's the implausibility? Yes, Your Honor. That's the suspicion of being a victim of a bomb. To be a victim of a bomb and then for the police to take a step in logic that because they were victims of a bomb they themselves would be involved. In fact, based on the claims alleged by the petitioner, this is not a typical Sikh asylum case based on religion or politics or the politics of Kazakhstan, but rather a criminal investigation of a bombing where the police had a legitimate reason for investigating him and having an interest in him. Even if there were no adverse credibility finding in this case and there were no major inconsistencies between his testimony and his documentation, even if there were no questions about his identity, he would have failed to show that he was persecuted on account of a protected ground. Turning to the adverse credibility issue, in Garovias, this court reversed an adverse credibility determination because the BIA did not articulate a legitimate basis or offer cogent reasons for their findings. This case is the exact opposite of Garovias. Here the immigration judge articulated several reasons for his adverse credibility finding. I'm going to just list them real quickly for the court. First, as Judge Layton observed, the immigration judge made a demeanor finding. She found, based on her observation of the alien over several days of testimony, that he was evasive, that his testimony appeared to be memorized, and that his body language indicated his uncomfortableness with answering direct questions posed to him. Secondly, there are major inconsistencies between petitioner's written declaration and his testimony. His written declaration says, I was held at the Nalandor police station for one month and then transferred to Ludinia. He then testified that he was held, but inconsistent with that, he testified that he was held at Nalandor, then transferred to Paguara, then to Pilar, and then to Ludinia. The immigration judge asked him to explain the inconsistencies, and he couldn't provide a credible reason for them. Secondly, his declaration says that he was, he suffered a terrible form of torture on his first arrest, i.e. the stretching between two poles. He testified before the immigration judge, however, that that occurred in his, at the time of his second arrest, which was a couple years later. Again, the immigration judge gave him a chance to explain this discrepancy, and his response was to change his story, change his testimony, and say, well, in fact, it did happen at the first, during the first arrest. And he didn't explain why he would be confused between the first and the second arrest. The third reason the immigration judge gives is the withdrawal of an affidavit that was initially proffered by the alien when he first came to immigration court. He submitted two affidavits from two men, both claiming to be his father. Now, his father's name is Dalit Singh Nila, and it was prepared by a local notary in India, and it was signed on a certain date in India. He submitted a second affidavit from a man named Sarwan Singh, and Sarwan Singh identified himself as the father of the plaintiff, of the petitioner in this case. It was prepared by the exact same notary who prepared his allegedly real father's affidavit and signed on the exact same date. The fourth reason the immigration judge explains for her adverse credibility decision is the driver's license. Now, opposing counsel made much of the fact that he has this driver's license, and it doesn't strain credibility for it to have been, I guess, signed three days before he was released from custody because it was pending for a while. Again, there's a couple of interesting insights into this case. When you look at the driver's license, and I would ask the court to look at it before they render a decision in this case, the picture on the driver's license is very old. He explains that by saying, well, the driver's license was issued in 1998, but I think I took the picture in 1992. If you look at the driver's license, it's good for five years. Presumably, these driver's licenses are reissued every five years if they expire after five years. Opposing counsel said, well, the immigration judge herself noted she doesn't know the laws regarding driver's licenses in India, and that's certainly understandable. But if you look at the driver's license on the face of it itself, it has different classifications for the types of operators. Now, if, as he's testified, he was riding a scooter back and forth between work and home for 11 years before this driver's license was issued, it would make sense he had previous driver's licenses. He's testified that he didn't. Finally, the alleged evidence that Petitioner obtained from India came in an envelope, which was please forgive me, I forget the name of the brother's name, but she's the wife of one of his brothers. And the return address is his hometown in India, in Punjab. Now, he testified that this wife and this brother were, they didn't know where their whereabouts were because they were so scared of the police, they had just disappeared and they weren't sure where they were, but they definitely were not in his hometown because they had suffered past persecution, had a well-founded fear of future persecution. He tries to explain the fact that the wife, his sister-in-law, is still living there by suggesting that, well, my father just used her name as the return addressee. And again, that strains credulity because the father doesn't speak English and the return address is written in English, so it's clearly not written by him. And that fact that his sister-in-law still lives in his hometown brings us to another issue that mitigates against a finding of past persecution or well-founded fear of future persecution in this case, i.e., his family in India appears to be safe and sound in his hometown. And this Court has held repeatedly that militates against a finding of well-founded fear. Well, don't we have cases going both ways on that? You do, Your Honor. But in this case, undoubtedly the fact that individuals similarly situated to him who he's alleged were all detained with him and allegedly persecuted with him, the fact that they're all still living there and they're fine would certainly support the immigration judge's conclusion that his claim is implausible. On the basis of the specific, cogent reasons that go to the heart of petitioner's claim for asylum, i.e. his identity as a member of a family that has allegedly been mistakenly tied to seek terrorists by the police and the alleged harm suffered by him, the major inconsistencies regarding his testimony about the alleged harm suffered by him, his initial offering of an apparently fraudulent document by a second father and the overall implausibility of his claim, we ask the court to affirm the final order of removal and deny the petition for if there are no further questions, we're done. Right. Thank you. Thank you. Mr. Roboto? Thank you. I refer to the court to page 177 of the administrative record where petitioner testifies that you don't need a driver's license to operate that scooter for the 11 years that he did. But isn't the submission of two affidavits from two different individuals who claim to be your father a bad way to get started in an asylum hearing? It's terrible, but petitioner discovered the mistake and had it withdrawn. He just simply requested documents. In this case, the notary must have made a mistake. I don't know how else to explain that. However, he did not try to submit it in the record because he knew it was wrong and that it was a mistake. And I don't think he should be penalized for realizing that it was a mistake. As far as Response Council's observance of the photo on the driver's license, being the fact that according to Response Council, petitioner is not an observant Sikh because he wasn't wearing a turban or a beard. Petitioner did not testify in court that he was an amritdhari or baptized Sikh, a type of Sikh that would require such a such a physical manifestation of their religion. But yet, but that he was a he was, I believe, sehijdhari Sikh, in which case he would not need to observe all the five tenets of the Sikh religion. So I don't think it's fair to construe the petitioner as not being an observant Sikh. Furthermore, Response Council's allegation that even if a petitioner's testimony is deemed to be credible, the police conducted a legitimate investigation into his case. I don't think that's possible, considering the fact that he wasn't formally arrested or charged with a crime, never brought before a court of law, was detained for six months on end on two occasions and severely beaten. These are all this is all evidence that it wasn't a legitimate investigation, but in fact, based on their false allegations that he was a militant and their persecution of him because of his religion and political and imputed his testimony regarding the bombing and how he was initially suspected of militant activity being and not being plausible. I submit that it is entirely plausible if if the police looked into the situation and discovered that his brother was and was somehow involved with militants, was paying them unwillingly to to leave them alone or whatnot, then I believe that they would have that is entirely plausible that they would have sought him out and his family based on that, considering the fact that they did so right after a second bombing and the bombing of, I believe, Beyonce that caused the assassination in August of 1995. Also, as far as legitimate investigation, I also want to point out that Singh v. Persecution based on imputed political opinion in this case. And finally, to conclude, the core of his testimony is not disputed in this case. And and and yet the immigration judge, without disputing his the core of his claim on the record, simply says at the end in her decision that that his testimony was not plausible. I don't see how you can say that his testimony regarding the police investigation of the bombing and their persecution of him and his family is not plausible when you don't even address it in in the transcript. And I submit. Thank you. All right. We thank both counsel for your argument. This case is submitted for decision on this case. On the argument. Calendar is, let's see. That was Nila to Sukhavendor Singh versus Ashcroft.
judges: Tashima, Clifton, Leighton